FILED
00 AUG 29
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEAST DIVISION

| | |
|---|---|
| ARTHUR J. MCDONALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| vs. ) | |
| ) | CV-99-B-1974-NE |
| AMSOUTH BANK, ) | |
| ) | |
| Defendant. ) | |

ENTERED
AUG 29 2000

## MEMORANDUM OPINION

This case is before the court on the Motion for Summary Judgment of AmSouth Bank ("Motion for Summary Judgment") filed by defendant AmSouth Bank ("AmSouth" or "defendant"), and the Motion for an Extension of Time to File Response to Summary Judgment ("Motion for Extension") and Arthur J. McDonalds's Motion to Compel Answers to Arthur J. McDonald's First Series of Interrogatories, First Set of Request for Admissions and First Set of Request for Production ("Motion to Compel"), both filed by plaintiff Arthur J. McDonald ("McDonald" or "plaintiff"). Upon consideration of the parties' briefs, evidentiary submissions, oral argument, and the relevant law, the court finds that defendant's Motion for Summary Judgment is due to be granted and plaintiff's Motion for Extension and Motion to Compel are due to be denied.

### I. FACTUAL BACKGROUND

Plaintiff is an African American male who, in July of 1997, applied with defendant for a home mortgage loan of $130,000. (Compl. ¶ 15-18.) On July 25, 1997, defendant denied plaintiff's application based on plaintiff's obligations-to-income ratio and his lack of sufficient

funds to close the loan. (Affidavit of Annette Ivey ("Ivey Aff.") ¶ 4, attachment 2 to Def.'s Mot. for Summ. J.) Under AmSouth's Consumer Loan Policy, one of the benchmark standards for eligibility is that the applicant's total obligations-to-income ratio should not exceed 36%. (Ivey Aff. ¶ 4.) AmSouth determined that plaintiff possessed a total obligations-to-income ratio of more than 49%. (Ivey Aff. ¶ 4.) AmSouth also determined that plaintiff did not have sufficient funds to close the loan. (Affidavit of Ethel Carter ("Carter Aff.") ¶ 7, Ex. E, attachment 1 to Def.'s Mot. for Summ. J.) Ethel Carter ("Carter"), a loan officer for AmSouth, testified that she personally notified plaintiff on July 25, 1997, of the decision to deny his application. (Carter Aff. ¶ 8, Ex. F.) In a document prepared by the plaintiff entitled "Background/History," he acknowledged that Carter phoned him in July of 1997 and informed him that AmSouth had denied his loan. (Ivey Aff. ¶ 21, Ex. J.) On July 30, 1997, Carter sent plaintiff a Statement of Credit Denial, Termination, or Change ("the Statement"). (Carter Aff. ¶ 9, Ex. G.) In the Statement, defendant stated that it denied plaintiff's loan application due to his excessive obligations-to-income ratio. (Carter ¶ 9, Ex. G.)[1]

## II. PROCEDURAL BACKGROUND

Plaintiff filed the present action on July 29, 1999, alleging that (1) defendant denied him financing because of his race, in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* (Count One); (2) defendant denied him financing because of his race, in

---

[1] In her affidavit, Carter also testifies that the Statement shows that the "loan was denied based on [plaintiff's] . . . insufficient funds to close the loan." (Carter Aff. ¶ 9.) In fact, the Statement does not show insufficient funds as a basis for denial. (*Id.* at Ex. G.) Other undisputed evidence in the record, however, shows that insufficient funds to close the loan was indeed a basis for the loan denial. (*Id.* at ¶ 7, Ex. E; Ivey Aff. at ¶ 20, Ex. I.) Regardless, the discrepancy is not relevant to the court's decision.

violation of 42 U.S.C. § 1981 ("section 1981") (Count Two); and (3) defendant negligently applied and/or computed his debt-to-income ratio, resulting the denial of his loan application. (Count Three).

AmSouth filed its Motion for Summary Judgment on November 23, 1999. AmSouth moved for summary judgment on the grounds that (1) the applicable statutes of limitations bar all of plaintiff's claims; and (2) plaintiff was not a qualified applicant and, therefore, cannot establish a prima facie case of discrimination under the ECOA or section 1981.

Pursuant to Exhibit A of this court's Scheduling Order entered on October 29, 1999, plaintiff's brief in opposition and evidentiary materials were due no later than December 14, 1999. Plaintiff did not submit a brief in opposition, or file any evidentiary materials or a motion for an extension of time to respond by the deadline.

On January 3, 2000, almost three weeks after the deadline for his opposition, plaintiff filed the Motion for Extension. As grounds for the extension, plaintiff claimed that defendant did not respond to discovery requests essential to his opposition to defendant's Motion for Summary Judgment. Plaintiff's Motion for Extension did not specifically identify which outstanding interrogatories or production requests were essential to his opposition.

On January 10, 2000, plaintiff submitted a Memorandum in Support of Denial of Motion for Summary Judgment against AmSouth Bank ("Pl.'s Brief"). In this brief, plaintiff addressed only the statute of limitations issue; he did not respond to AmSouth's argument that plaintiff could not establish a prima facie case of credit discrimination. On January 18, 2000, plaintiff filed his Motion to Compel, asking the court to direct the defendant to answer specific interrogatories, requests for admissions, and requests for production.

3

## III. DISCUSSION

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

B.   **Plaintiff's Motion for Extension and Motion to Compel**

In his Motion for Extension, plaintiff states that he received defendant's responses to his requests for production, requests for admissions, and interrogatories on December 12, 1999, December 13, 1999, and December 17, 1999, respectively. Plaintiff contends that defendant failed to supply key documents and information essential to plaintiff's opposition to defendant's Motion for Summary Judgment. Further, plaintiff states that he wrote defendant's counsel on December 31, 1999, requesting a reply to plaintiff's discovery requests pursuant to Rule 37 of the Federal Rules of Civil Procedure.

In response, AmSouth contends that plaintiff's Motion for Extension was insufficient. The court agrees for the following reasons. First, plaintiff did not file the Motion for Extension until almost three weeks after his response was due. Plaintiff's reason for requesting an extension of time was that he had not received responses to his discovery requests, and those requests were necessary to respond to defendant's Motion for Summary Judgment. The plaintiff's discovery requests were served on defendant on November 12, 1999. Pursuant to the court's October 29, 1999, Scheduling Order, defendant's responses were not due until December 13, 1999 – one day before the plaintiff's deadline for filing his opposition to the Motion for Summary Judgment.[2] Consequently, plaintiff should have known when he received the Motion for Summary Judgment that defendant's responses to the discovery requests would not be available in time to frame his response. The circumstances which plaintiff alleged necessitated

---

[2] December 12, 1999, fell on a Sunday, moving the due date to December 13. Defendant timely responded to plaintiff's discovery requests. (*See* AmSouth's Opp. to Pl.'s Mot. to Compel and attachments thereto.)

an extension of time existed prior to the expiration of the court's deadline. Plaintiff provided no excuse for his delay in requesting an extension.

Second, plaintiff failed to comply with Rule 56(f) of the Federal Rules of Civil Procedure, which sets forth the method for obtaining additional time to oppose a motion for summary judgment.[3] "Subsection (f) allows a party who has no specific material contradicting his adversary's presentation to survive a summary judgment motion if he presents valid reasons justifying his failure of proof." *Wallace v. Brownell Pontiac-GMC Co.*, 703 F.2d 525, 527 (11th Cir. 1983) (citation and quotations omitted). "A party seeking the shelter of rule 56(f) must offer an affidavit explaining to the court why he is unable to make a substantive response as required by subsection (e)." *Id.* "[T]he nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Id.* (citation and quotations omitted).

---

[3] The Rule states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

Plaintiff did not submit an affidavit setting forth the reasons why he could not present facts essential to justify his opposition to the motion, as required under Rule 56(f). After he filed the Motion for Extension, plaintiff filed his Motion to Compel. However, "a trial court is under no obligation to treat such motions . . . as satisfying the requirements of subsection (f)." *Wallace*, 703 F.2d at 527.

Even if the court treated the Motion to Compel or the Motion for Extension as satisfying the affidavit requirement of Rule 56(f), neither motion identified outstanding discovery requests relevant to defendant's Motion for Summary Judgment. The Motion for Extension merely asserted that the discovery "is needed to effectively respond to the motion for summary judgment." (Pl.'s Mot. for Ext.)[4] The Motion to Compel identified discovery requests for which plaintiff sought responses, however none were specifically identified as relevant to issues raised in defendant's Motion for Summary Judgment. Further, at oral argument, plaintiff's counsel did not identify any outstanding interrogatory or production request relevant to defendant's Motion for Summary Judgment.[5]

---

[4] Plaintiff's Motion to Compel simply states "the discovery sought by the undersigned on behalf of Plaintiff Arthur J. McDonald is necessary for the undersigned to continue with and complete his case preparation." Plaintiff did not attach the discovery requests to the Motion to Compel.

[5] The requests included a request for summary information about every person who applied with defendant for a residential loan during a four-year period, the outcome of each application, the reason for any rejection, and the race of each applicant. Plaintiff also requested a copy of every application received during that period. In addition, plaintiff requested information concerning the sale of loans to investors, such as how often such sales occur, and the criteria for determining whether to sell a loan to an outside investor. None of these outstanding discovery requests were related to issues raised by defendant's Motion for Summary Judgment.

Based on the foregoing reasons, the court finds that plaintiff's Motion for Extension and Motion to Compel are due to be denied. Consequently, plaintiff's opposition to defendant's Motion for Summary Judgment was due December 14, 1999, twenty-one days after defendant filed its motion. Plaintiff did not submit his response until January 11, 2000, almost four weeks after it was due. Because plaintiff failed to comply with the court's October 29, 1999, Scheduling Order, as well as Rule 56(f) of the Federal Rules of Civil Procedure, plaintiff's brief and evidentiary materials submitted in opposition to plaintiff's Motion for Summary Judgment are untimely and due to be stricken. Once plaintiff's untimely response is stricken, there is no evidence to negate or contradict the materials submitted by defendant as required by rule 56(e) of the Federal Rules of Civil Procedure.[6] In the absence of a response from plaintiff, summary judgment is due to be granted in favor of defendant, if appropriate. *See* Fed. R. Civ. P. 56(e).[7] Although plaintiff's opposition is due to be stricken as untimely, the court will nonetheless

---

[6] The Rule provides, in relevant part, that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e):

[7] Although plaintiff's opposition is stricken as untimely, nothing in his submissions would have been sufficient to defeat defendant's Motion for Summary Judgment, as discussed infra. Therefore, even if the court were to consider those submissions, summary judgment would be granted.

consider plaintiff's evidence and argument in its analysis of defendant's Motion for Summary Judgment.

**C.     AmSouth's Motion for Summary Judgment**

    *1.     Equal Credit Opportunity Act Claim*

        <u>**a.     Prima Facie Case**</u>

Defendant moves for summary judgment on plaintiff's ECOA claim on the grounds that plaintiff has not established a prima facie case of credit discrimination. Because plaintiff has not presented any direct evidence of discrimination, he must establish a prima facie case of intentional discrimination based on circumstantial evidence. Under the familiar analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802.

If the defendant succeeds in carrying this burden, then the plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives (i.e., race discrimination or retaliation). *Burdine*, 450 U.S. at 253. A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether

9

defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To establish a prima facie case of credit discrimination under the *McDonnell Douglas* framework, plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied and was qualified for a loan; (3) his loan application was rejected despite his qualifications; and (4) defendant continued to approve loans for applicants with qualifications similar to those of plaintiff. *See Crawford v. Signet Bank,* 179 F.3d 926, 928 (D.C. Cir. 1999) (applying the *McDonnell Douglas* framework in a section 1981 case).[8]

---

[8] The Supreme Court has held that Title VII's "carefully designed framework of proof" applies to section 1981 discrimination claims. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989). Courts also use this framework of proof to resolve claims of discrimination under the ECOA. *See Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215 (1st Cir. 2000) (applying *McDonnell Douglas* framework to ECOA discrimination claim); *Lewis v. ACB Bus. Servs. Inc.*, 135 F.3d 389, 406 (6th Cir. 1998) (applying *McDonnell Douglas* framework to ECOA retaliation claim); *Moore v. United States Dep't of Agric.*, 55 F.3d 991, 994 (5th Cir. 1995) (implying *McDonnell Douglas* framework would apply but for fact plaintiffs presented direct evidence of discrimination).

The parties do not contend that application of the *McDonnell Douglas* burden-shifting analysis is improper. However, the Seventh Circuit has recently rejected that standard in most credit discrimination cases. *See Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 713-15 (7th Cir. 1998). Under either the *McDonnell Douglas* or the Seventh Circuit's *Latimore* analysis, however, plaintiff must demonstrate that he was a qualified borrower in the first place. *See id.* at 714; *Moore*, 55 F.3d at 994. Because the resolution of that issue is dispositive here, the court need not reach the question of whether the *McDonnell Douglas* standard applies in credit discrimination cases. *See Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1246 n.4 (10th Cir. 1999) (noting that under either test, the plaintiff must demonstrate that he or she was qualified for the loan).

In *Crawford*, the plaintiffs alleged that the bank engaged in discriminatory "redlining"[9] in violation of section 1981. *Id.* at 928-929. The trial court found that because the plaintiffs did not present any evidence of a satisfactory appraisal, they could not show that they were qualified for the loan. *Id.* The Court of Appeals affirmed summary judgment for the defendant. *See id.; see also Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1246 (10th Cir. 1999) (affirming summary judgment in an ECOA case on the basis that plaintiff was not qualified for the loan); *Guisewhite v. Muncy Bank & Trust Co.*, No. 4: CV-95-1432, 1996 WL 511525, at *5-*6 (M.D. Pa. Mar. 25, 1996) (granting summary judgment in an ECOA case based on the plaintiff's failure to establish that he was a qualified applicant).

In this case, plaintiff has not established a prima facie case of discrimination because there is no evidence that he was a qualified applicant. In order to qualify for a conventional residential loan, AmSouth's Consumer Loan Policy requires that the applicant's total monthly obligations-to-income ratio not exceed 36%. (Ivey Aff. ¶ 7.) AmSouth determined that plaintiff's total monthly obligations equaled $3,437.03 and his total monthly income was $6,922.54. (Ivey Aff. ¶¶ 8-15.) Therefore, the ratio of plaintiff's monthly obligations to income was 49.64%, which exceeds the qualifying ratio by more than 13%.[10] (Ivey Aff. ¶ 16.)

---

[9] "Redlining" is the practice of financial institutions intentionally not lending to certain neighborhoods or parts of a community. *Crawford*, 179 F.3d at 928 n.4.

[10] Plaintiff alleged at oral argument that his ratio was actually 42%, still substantially higher than the benchmark ratio. Plaintiff also argued that defendant made exceptions to its benchmark ratios. However, the bases for exceptions are spelled out in defendant's loan policy, which was attached to defendant's Motion for Summary Judgment, (Ivey Aff., Ex. B), and plaintiff failed to show that any exception would have applied to his application.

11

Further, according to AmSouth policy, plaintiff needed $10,091.70 to close the loan and he had only $7,979.57 in available liquid assets, a difference of $2,112.13. (Ivey Aff. ¶ 16.) An AmSouth underwriter determined on July 25, 1997, that plaintiff was not qualified for the loan based on excessive obligations and insufficient funds to close the loan. (Carter Aff. ¶ 7.) On that same day, AmSouth's Loan Committee agreed with the underwriter's recommendation that the loan be denied. (Carter Aff. ¶ 7, Ex. E.) Because plaintiff was not qualified under AmSouth's Consumer Loan Policy, he cannot establish the existence of an element essential to his prima facie case. Therefore, summary judgment is due to be granted in favor of defendant on plaintiff's ECOA claim.

### b. Statute of Limitations

Defendant also moves for summary judgment on the ECOA claim on the grounds that plaintiff violated the applicable statute of limitations. The ECOA makes it "unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction . . . on the basis of race . . . ." 15 U.S.C. § 1691(a). The ECOA contains a two year statute of limitations which begins to run on "the date of the occurrence of the violation." 15 U.S.C. § 1691e(f). The statute is violated when an applicant is treated less favorably than other applicants on the basis of race. *See* 12 C.F.R. § 202.2(n) (1981).

In the present case, the alleged violation occurred on July 25, 1997, when defendant denied plaintiff's loan application. Plaintiff filed his Complaint more than two years later, on July 30, 1999. Consequently, the court finds that plaintiff did not timely file his ECOA claim, the claim is barred by the statute of limitations, and defendant's Motion for Summary Judgment as to the ECOA claim is due to be granted.

Plaintiff contends that a cause of action under the ECOA does not accrue until the plaintiff discovers the alleged violation. Generally, the discovery rule is read into the statutes of limitation governing federal claims in the absence of a contrary directive from Congress. *See Cada v. Barter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1991). However, in *Farrell v. Bank of New Hampshire-Portsmouth*, 929 F.2d 871, 874 (1st Cir. 1991), the First Circuit found that when enacting the ECOA, Congress directed that the discovery rule should not be read into it.

In *Farrell*, the plaintiffs alleged that the bank's requirement that they guarantee loans to their spouses' partnership violated the ECOA. *Id.* at 872. The plaintiffs argued that their claims accrued when they were notified that the bank was requiring their personal guarantees on the loans, which they alleged did not occur until the bank requested their signatures at closing. *Id.* Based on the legislative history of the Act, the court held that notice to the individual claimant of adverse action is not required to start the limitations period. *Id.* at 873-74.

The court reasoned that Congress amended the ECOA in 1976 to enlarge the limitation period to two years and to give a claimant a further year after the commencement of an enforcement proceeding or a civil action instituted by the Attorney General. *See id.* at 874. The Senate report accompanying the amendment stated:

> The Committee also recommends a change in the statute of limitations applicable to actions brought under this Act. The present one-year limitation is, we believe, too short a period of time for violations of antidiscrimination legislation. The development of facts – especially in the case of agency or Attorney General actions – may require more than a year. Discriminatory practices, unlike violations of Truth in Lending, are not apparent from the face of particular documents or contracts. The Committee

>therefore recommends that the statute of limitations be extended to two years.

*Id.* (citing S. Rep. No. 94-589, at 14 (1976), *reprinted in* 1976 U.S.C.C.A.N. 403, 416).

Based on this legislative history, the First Circuit found that "[i]t is clear that were we to judicially engraft a requirement of notice to the individual claimant, we would be disregarding the way in which the Congress sought to accommodate aggrieved individuals – by doubling the general limitations period and by providing an additional year following the commencement of timely government enforcement proceedings or civil actions." *Farrell*, 929 F.2d at 874. The court concluded that the legislative history of the amendment provided a clear congressional directive not to extend the limitations period further by tolling it until the plaintiff receives notice of the alleged violation.

The statutory language itself also clearly evidences congressional intent not to read the discovery rule into the ECOA. In *Houghton v. Insurance Crime Prevention Institute*, 795 F.2d 322, 325 (3rd Cir. 1986), the court held that the discovery rule was not applicable to the statute of limitations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Like the ECOA, the FCRA contains a two-year statute of limitations, with one exception which provides:

>except that where a defendant has materially and willfully misrepresented any information required under this subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this subchapter, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

*Houghton*, 795 F.2d at 324 (quoting 15 U.S.C. § 1681p). Based on the principle that "where Congress has enunciated an exception to a general prohibition, 'additional exceptions are not to

14

be implied in the absence of evidence of a contrary legislative intent,'" the Third Circuit found that applying the discovery rule to the FCRA was inconsistent with congressional intent to permit tolling of the statute of limitations in one specific situation. *Id.* at 325 (quoting *Andrus v. Glover Cons. Co.*, 446 U.S. 608, 616-617 (1980)).

Similarly, the ECOA prohibits suits that are not commenced within two years of the date of the occurrence of the alleged violation, but with two exceptions. The applicable section provides:

> No such action shall be brought later than two years from the date of the occurrence of the violation, except that –
>
> (1) whenever any agency having responsibility for administrative enforcement under section 1691c of this title commences an enforcement proceeding within two years from the date of the occurrence of the violation,
>
> (2) whenever the Attorney General commences a civil action under this section within two years from the date of the occurrence of the violation,
>
> then any applicant who has been a victim of the discrimination which is the subject of such proceeding or civil action may bring an action under this section not later than one year after the commencement of that proceeding or action.

15 U.S.C. § 1691e(f).

The statutory language clearly evidences legislative intent to provide an exception to the statute of limitations in specific situations. As in *Houghton*, because Congress has enunciated exceptions to the statute of limitations, it would be inconsistent with the congressional purpose to imply additional exceptions by reading the discovery rule into the ECOA. Therefore, the court is of the opinion that the statute of limitations under the ECOA accrues on the date of the alleged

violation, not the date on which plaintiff discovered it. As the alleged violation occurred on July 25, 1997, plaintiff's ECOA claim is barred by the applicable two-year statute of limitations and summary judgment is due to be granted in favor of AmSouth as to Count One.

2. **Section 1981 Claim**

   a. **Prima Facie Case**

Defendant moves for summary judgment on plaintiff's section 1981 claim on the grounds that plaintiff has not established a prima facie case of credit discrimination. As discussed above, the *McDonnell Douglas* burden-shifting framework and prima facie case apply to both the ECOA claim and the section 1981 claim. *See Rosa*, 214 F.3d at 215 (ECOA discrimination claim); *Crawford*, 179 F.3d at 928 (section 1981 credit discrimination case); *Lewis*, 135 F.3d at 406 (ECOA retaliation claim); *but see Latimore*, 151 F.3d at 713-15 (rejecting the application of the *McDonnell Douglas* framework to credit discrimination cases); *see also Matthiesen*, 173 F.3d at 1246 n.4 (noting that under either the *McDonnell Douglas* or the Seventh Circuit's *Latimore* analysis, the plaintiff must demonstrate that he or she is qualified for the loan.) As discussed in the court's analysis of plaintiff's ECOA claim, plaintiff was not qualified under AmSouth's Consumer Loan Policy and cannot establish the existence of an element essential to his prima facie case. Therefore, summary judgment is due to be granted in favor of defendant on plaintiff's section1981 claim.

   b. **Statute of Limitations**

Defendant also moves for summary judgment on the grounds that plaintiff's section 1981 claim is barred by the applicable statute of limitations. All section 1981 actions commenced in Alabama are subject to the two-year statute of limitations for personal injury actions. Ala. Code

16

§ 6-2-38(*l*) (1975); *Goodman v. Lukens*, 482 U.S. 656, 660 (1987). A claim under section 1981 accrues "the moment the plaintiff knows or has reason to know of the injury that is the basis of [the] complaint." *Beasley v. Alabama State Univ.*, 966 F.Supp. 1117, 1128 (M.D. Ala. 1997) (alteration in original).

Defendant submitted evidence that plaintiff discovered the alleged discrimination on July 25, 1997, when Carter personally notified him, by phone, that his loan application had been denied. (Carter Aff. ¶ 8, Ex. F.) Carter also documented the phone call to plaintiff on the Loan Status Card in plaintiff's file:

> 7/25    Notified Mr. McDonald that U.W. declined loan because ratios are too high. Explained that with rental properties showing losses for last 2 yrs. made income lower so total debt ratio is higher & per FNMA guidelines total debt ratio is too high.

(Carter Aff., Ex. F.) Furthermore, McDonald prepared a document entitled "Background/History," in which he acknowledged the phone conversation in July 1997 during which Carter informed him of AmSouth's denial. (Ivey Aff. ¶ 21, Ex. J.)

Plaintiff filed this lawsuit on July 29, 1999, two years and four days after defendant claims it notified plaintiff of the credit denial. Based on the evidence submitted by defendant, plaintiff's section 1981 claim would be barred by the statute of limitations.

Plaintiff, however, submitted an affidavit with his untimely brief in opposition to defendant's Motion for Summary Judgment. In the affidavit, plaintiff states "I was not told nor did I learn prior to July 30, 1997, that my loan application had been denied." (Pl.'s Aff. at 2, attached as Ex. A to Pl.'s Brief.) In the affidavit, plaintiff did not address his earlier "Background/History" acknowledging the phone call. (Pl.'s Aff.) At oral argument, plaintiff's

17

counsel did not contest the authenticity of the earlier statement, or deny that the plaintiff authored it. However, the court finds that if the plaintiff's affidavit was timely, it would create a factual issue as to when plaintiff discovered the credit denial. Nonetheless, the court has already found that summary judgment is due to be granted based on the plaintiff's failure to establish a prima facie case. Thus, the issue of whether plaintiff's section 1981 claim is barred by the statute of limitations is immaterial.

### 3. *Negligence Claim*

Defendant moves for summary judgment on plaintiff's common law claim of negligence based on the applicable two-year state statute of limitations. Ala. Code § 6-2-38(*l*) (1975). Plaintiff did not address this issue in his brief or at oral argument. Under Alabama law, an action for negligence accrues on the date of the injury or damage. "There is, however, no 'discovery rule' to toll the running of the limitations period with respect to negligence or wantonness actions . . . ." *Henson v. Celtic Life Ins. Co.*, 621 So.2d 1268, 1274 (Ala. 1993). In Count Three, plaintiff claims that defendant negligently calculated his debt-to-income ratio, resulting in the denial of his loan. As noted, defendant allegedly injured plaintiff when it denied his loan on July 25, 1997. Therefore his claim of negligence accrued on July 25, 1997. (Carter Aff. ¶ 7.) As McDonald did not file this action until July 29, 1999, his negligence claim is barred. Therefore, summary judgment is due to be granted in favor of defendant on Count Three.

### IV. CONCLUSION

Based on the foregoing reasons, the court finds that plaintiff's Motion for an Extension of Time to File Response to Summary Judgment and Motion to Compel are due to be denied, plaintiff's Memorandum in Support of Denial for Summary Judgment against AmSouth Bank

and evidentiary materials submitted therewith are due to be stricken, and defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 29th day of August, 2000.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge